## Case No. 6,381.
### HENRY v. CURRY.
[Abb. Adm. 433.] [1]

District Court, S. D. New York. Jan., 1849.

ADMIRALTY—LIBEL FOR WAGES—MISNOMER—CERTIFIED COPY OF SHIPPING ARTICLES.

1. In defence to a libel for wages as cook and steward by one William Henry, respondent put in shipping articles executed by William Henderson as cook and steward. *Held*, that the presumption was that the libellant was the person who had entered into the articles.

2. Maritime courts will not lay much stress on an objection of misnomer, unsupported by evidence that the party was in fact not known by the name ascribed to him.

3. It seems, that where original shipping articles are proved before a commissioner, and redelivered to the vessel, who thereupon pursues her voyage, a copy certified by the commissioner is competent evidence upon the hearing.

This was a libel in personam by William Henry against Frederick Curry, sued as Johnson, master of the bark Alpine, for wages.

Alanson Nash, for libellant.

Griffin & Laroque, for respondent.

BETTS, District Judge. The libellant alleges that he shipped on October 24, 1848, in the bark Alpine, as cook and steward, at $16 wages per month, to perform a voyage from Halifax, Nova Scotia, to Sydney and New York, where the voyage was to terminate; and that he performed his duty on board up to November 12th, when the vessel arrived at this port and the voyage ended. He claims $9 balance of wages due him. The answer asserts that the bark is a British vessel, and the libellant a British seaman; and that the voyage for which he engaged was from Halifax to various ports including New York, and to Europe, and back to British North America, for a period not exceeding one year. The original articles were produced on the preliminary hearing before the commissioner, and identified by the testimony of the chief mate. "William Henderson" is entered therein as cook and steward. The name is signed with a cross or mark. The handwriting of the witness to the execution of the articles by Henderson is proved, and that he resides in Nova Scotia. This action is in the name of "William Henry."

The sufficiency of this evidence is controverted by the libellant, on the ground that, as he is not proved to have been known on board by the name of Henderson, the presumption is that he came out as a substitute for Henderson, but never bound himself to

the engagement of Henderson by subscribing to the articles. The objection is also extended to the further suggestion, that even if proof of the handwriting of subscribing witness is ever adequate evidence of the execution of articles, it can be so only on the exhibit of the original articles to the court, in order to show that the whole transaction wears the appearance of genuineness and correctness. The libellant having brought suit for wages in the capacity of cook and steward, and having adopted the name of "William Henry," it is incumbent on him to prove that to be his true name; otherwise the inference will be, that he is the person who shipped and subscribed the articles in that capacity. The difference in surnames is not so great, but that a misconception in pronunciation might easily occur; and maritime courts are too familiar with the habit of sailors to assume a variety of names, to lay special stress on an objection of misnomer, unaccompanied with evidence on the part of the seaman that he did not use the name attached to the articles, and that he was known in the ship by a different one. No evidence is offered by the libellant that he is "William Henry" and not "William Henderson"; and since he assumes to himself the description of cook and steward, applied in the articles to "William Henderson," it must be presumed by the court that he is the person who entered into the contract. It is moreover to be observed, that the libellant is not very exact in his recollection and statement of names. He sues the master by the name of "Johnson," but gives no evidence that anybody on board did not perfectly well know that his name was "Curry." It so appeared upon the articles, and was proved to be his true name by the testimony of the chief mate.

The original articles, after having been examined and proved in presence of a commissioner, upon the hearing on return of the summons, were restored to the vessel, and had gone with her on her voyage. A copy certified by the commissioner is attached to the depositions. For the libellant, it is objected that such copy is incompetent evidence. The cause not depending upon the evidence furnished by the articles, I do not think it necessary to go into the discussion of that point; but my impression is, that the evidence should be regarded competent and sufficient, the authentication of the articles having been made in a judicial proceeding in the cause under the act of congress of July 20, 1790 [1 Stat. 131], before a magistrate authorized to conduct it. The chief mate testifies that the voyage was not to end at New York, but was to be continued from here to Ireland, and back to Halifax, and that the libellant shipped for the voyage. No evidence is furnished by the libellant showing the termination of the voyage at this port, or his discharge by the master. Upon the well-settled doctrine of admiralty

courts, he therefore cannot sustain this action, irrespective of the nationality of the vessel. But suing as a British seaman, for services on board a British vessel, his claim to relief in this court is wholly destitute of merits. Libel dismissed with costs.